# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH MARIE MARTINEZ, | Case No. 1:16-cv-01777-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

## I. INTRODUCTION

On November 21, 2016, Plaintiff Elizabeth Marie Martinez ("Plaintiff") filed a complaint under 42 U.S.C. §§405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on February 27, 2017). She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

Magistrate Judge.[2]

## II. BACKGROUND

On August 24, 2012, Plaintiff filed an application for DIB and SSI, alleging that she became disabled on April 24, 2012, due to diabetes, arthritis, vertigo, and migraines. (Administrative Record ("AR") 209, 216, 242.) Plaintiff was 52 years old when she filed the application. (AR 209 (listing Plaintiff's date of birth as July 15, 1960).) Plaintiff has a high school education, and she previously worked as a retail manager from 1998 to 1999 and a retail demo technician from 2000 to 2010. (AR 243.)

### A. Relevant Medical Evidence[3]

On June 19, 2012, Plaintiff visited the emergency room at Adventist Medical Center, experiencing pain and swelling in her hands. (AR 362-63.) Examinations revealed that Plaintiff had tenderness and swelling in her hands, but a normal range of motion. (AR 362.) However, the results of x-rays showed that Plaintiff's hands were normal, and all other physical and mental examinations were normal. (AR 362-63, 365, 410.) Plaintiff was diagnosed with arthritis and hand pain. (AR 363.) Plaintiff was prescribed Ibuprofen and Vicodin. (AR 363.)

On July 11, 2012, Plaintiff presented at Community Medical Centers, where she had previously established care in September 2011, and was examined by Nargis Naheed, M.D. (AR 385, 396.) Dr. Naheed found tenderness in Plaintiff's wrists and hands, swelling, and decreased range of motion in her hands, wrists, shoulders and ankles. (AR 395.) Dr. Naheed diagnosed Plaintiff with diabetes mellitus, hypertension, migraines, fatty liver, eczema, unspecified asthma, arthritis sicca, and low back pain. (AR 396.) Dr. Naheed found that Plaintiff's migraines, hypertension, and diabetes were well controlled with medication, diet, and lifestyle modifications. (AR 393-95.)

On August 15, 2012, Plaintiff presented at Community Medical Centers for a follow-up, and was examined by Dominic T. Dizon, M.D. (AR 398.) Plaintiff reported swelling in her

---
[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 8.)
[3] As Plaintiff's assertion of error is limited to the Administrative Law Judge's purported failure to address medical evidence of Plaintiff's carpal tunnel syndrome and fibromyalgia, only evidence relevant to that argument is set forth below.

finger joints, wrists, knees, ankles, and cervical spine. (AR 396.) Plaintiff's laboratory results were positive for rheumatoid arthritis, and Dr. Dizon diagnosed Plaintiff with rheumatoid arthritis. (AR 396.) Plaintiff was prescribed prednisone and methotrexate. (AR 396.)

On October 2, 2012, Plaintiff returned to Community Medical Centers, and was examined by Paj Shekhar, M.D. (AR 401-02.) Plaintiff reported an increase in her morning stiffness. (AR 401.) Dr. Shekhar found swelling of Plaintiff's hand joints, and assessed that she was only partially responding to the prednisone and methotrexate, "[s]uggest[ing] possible concomitant fibromyalgia." (AR 401.) Dr. Shekhar increased Plaintiff's dosage of methotrexate, reduced her dosage of prednisone, and prescribed Plaintiff two new medications, including weekly injections of Enbrel. (AR 402.)

### 1. Roger Wagner, M.D.

On October 16, 2012, Plaintiff was examined by internist Roger Wagner, M.D. (AR 410-15.) Plaintiff reported that she lived with her boyfriend, prepared simple meals, cleaned around the house, shopped, walked for exercise, and needed no help with personal hygiene except to occasionally put on a bra and button clothing. (AR 410-11.) Plaintiff complained of numbness and tingling in the soles of her feet, inflamed finger joints, morning stiffness, pain in her knuckles, wrists, ankles, and shoulders, and difficulty climbing stairs. (AR 410-11.)

Dr. Wagner initially observed that Plaintiff's face was round and puffy (perhaps associated with a hormonal condition), she rose easily from her chair, walked normally, although she avoided moving her hands and arms while doing so, used both hands with some dexterity, and successfully bent over to remove her shoes and socks. (AR 411.) Upon examination, Dr. Wagner noted that Plaintiff's gait and station were normal, she used no assistive device, and she had minimum swelling in her ankles. (AR 413.) Plaintiff demonstrated discomfort when flexing her elbows, but was not limited. (AR 413.) She had mild tenderness and swelling in her wrists, but no tenderness or swelling in her finger joints (AR 413). Plaintiff demonstrated normal motor strength and muscle bulk in both arms and legs, good motor strength in both hands, and reasonably good hand dexterity. (AR 413-14.) She had reduced grip strength in both hands, but she was able to pick up a paper clip. (AR 413-14.) Dr. Wagner diagnosed Plaintiff with diabetes

3

and rheumatoid arthritis. (AR 414.)

With regard to Plaintiff's functional capacity, Dr. Wagner opined that Plaintiff could stand and walk up to four hours in an eight-hour workday, given her rheumatoid arthritis, sit with no limitations in an eight-hour workday, occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, given her polyarthritis, and frequently perform postural and manipulative activities. (AR 414.)

### 2. Richard D. Bertken, M.D.

On January 15, 2013, Plaintiff presented for follow-up care with rheumatologist Richard D. Bertken. (AR 418.) Plaintiff complained of widespread pain, increased morning stiffness, and morning pain in her shoulder and groin. (AR 418.) Dr. Bertken performed a musculoskeletal examination, which revealed mild-to-moderate proximal muscle tenderness. (AR 418.) Dr. Bertken noted that Plaintiff's rheumatoid arthritis was controlled, but that her pain symptoms may be a side effect of "statin myopathy" or "statin medication." (AR 418.) Dr. Bertken substituted Plaintiff's statin prescription with fish oil. (AR 418.)

On May 16, 2013, Plaintiff returned to Dr. Bertken for a follow-up. (AR 432.) Plaintiff complained of shooting pain in her fingers, and examinations revealed widespread tenderness—a "full complement of [fibromyalgia] symptoms." (AR 432.) Dr. Bertken noted that Plaintiff's rheumatoid arthritis was "in good control." (AR 432.)

On March 27, 2014, Dr. Bertken examined Plaintiff, and noted that the results revealed classic symptoms of carpal tunnel syndrome, and moderate inflammation of her metacarpophalangeal joints. (AR 448.) Plaintiff was diagnosed with carpal tunnel syndrome, and given a steroid injection. (AR 448.)

On July 3, 2014, Plaintiff reported to Dr. Bertken that her symptoms had been stable since her prior visit, that she had not experienced further joint swelling, but that she continued to experience occasional joint pain. (AR 439.) Plaintiff further reported that the injection she received during her prior visit "helped a lot in controlling her symptoms." (AR 439.) Dr. Bertken diagnosed Plaintiff with chronic bilateral carpal tunnel syndrome, more on the right than left, and prescribed wrist splints. (AR 443.)

### 3. State Agency Physicians

On April 10, 2013, W. Jackson, M.D., a state agency physician, found that Plaintiff had the severe impairments of inflammatory arthritis and diabetes mellitus, but that the "overall evidence suggest[ed] improvement with treatment," and that "[h]er recent flare appears due to a different medication which should improve with discontinuation." (AR 100.) Dr. Jackson assessed Plaintiff's residual functional capacity ("RFC")[4] and found that Plaintiff was able to sit, stand, or walk for six hours in an eight-hour workday, occasionally lift or carry 20 pounds, frequently lift or carry ten pounds, occasionally climb ramps, stairs, ladders, ropes, and scaffolds, occasionally stoop, kneel, crouch, and crawl, and frequently handle and finger "due to arthritis of the hands." (AR 101-02.) Dr. Jackson opined that Plaintiff should avoid concentrated exposure to extreme cold and vibration. (AR 102.)

On October 16, 2013, R. Fast, M.D., a state agency physician, issued an opinion affirming Dr. Jackson's opinion that Plaintiff could perform light work with frequent handling and fingering. (AR 132.) Dr. Fast opined that "there is no evidence that show[ed] any worsening of [Plaintiff's] condition." (AR 128.)

### B. Administrative Proceedings

The Commissioner denied Plaintiff's applications for DIB and SSI initially on April 15, 2013, and again on reconsideration on October 17, 2013. (AR 138-42, 148-53.) Consequently, on November 19, 2013, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 154-56.) At the hearing on March 12, 2015, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 22, 36-81.)

### 1. Plaintiff's Testimony

Plaintiff testified that she has been diagnosed with rheumatoid arthritis, migraines, type 2 diabetes, and asthma. (AR 46, 47, 54, 59.) Plaintiff also testified that she underwent

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

5

successful arthroscopic surgery for a hernia in 2010. (AR 47-48.) Plaintiff described experiencing stiffness and swelling in her hands, as well as a sensation like "they're on fire," as a result of her rheumatoid arthritis. (AR 48.) For several months in 2012, Plaintiff was unable to move her fingers. (AR 55.) Plaintiff testified that she can use her hands to write, but she cannot type. (AR 51.) Plaintiff further described experiencing pain, spasms, and stiffness in her back and legs as a result of her rheumatoid arthritis. (AR 49, 51.) Plaintiff testified that the symptoms "flare up" every day, and she rated the severity of the pain as an eight out of ten. (AR 49, 56.)

Plaintiff stated she experiences migraines once or twice per week, and that her migraines last all day. (AR 64.) Plaintiff testified that her migraines have worsened over the years. (AR 65.) When experiencing a migraine, Plaintiff cannot eat or watch television, and she cannot tolerate light or movement. (AR 64-65.)

With regard to treatment, Plaintiff was initially prescribed Enbrel and prednisone for her rheumatoid arthritis, but at the time of the hearing she was taking HUMIRA, Lexapro, methotrexate, and hydroxychloroquine. (AR 49-50, 55-56, 65.) Plaintiff testified that the medications reduce the severity of her pain from an eight to a five, but the swelling and stiffness remain. (AR 50, 56.) However, Plaintiff received no injections, underwent no surgeries, and used no splints, brace, assistive device, or a Transcutaneous Electrical Nerve Stimulation ("TENS") unit. (AR 56.) Plaintiff does not apply a hot or cold compress to her hands or legs to relieve the pain. (AR 66.) Plaintiff was also prescribed Imitrex for her migraines. (AR 59.) Plaintiff testified that she was prescribed "a pill" for her diabetes, but that she received no insulin injections. (AR 59.) At the time of the hearing, Plaintiff was seeing only one doctor—a rheumatologist. (AR 53.) Plaintiff testified that neither her rheumatologist nor any other doctor has advised her that she cannot work as a result of her impairments. (AR 53.)

Plaintiff testified to the following physical capabilities. She can lift and carry small items, such as her purse and a gallon of milk. (AR 59-60.) She can use her hands, and reach overhead, side to side, and front to back. (AR 60-61.) Plaintiff testified that she walks approximately one block, two to three times per day. (AR 57.) However, Plaintiff cannot

stoop, kneel, crawl, or crouch. (AR 61.)

In her prior work as an assistant manager at Walmart and a demo technician at Sam's Club, Plaintiff regularly lifted up to 50 pounds, stocking bags of dog food and appliances, and unloading trucks. (AR 43-44.) Plaintiff performed these jobs from 2001 to 2010 until she was laid off from her job at Sam's Club. (AR 45.)

Plaintiff lives with her adult son. (AR 41.) She does not drive, but instead rides public transportation and receives rides from other people. (AR 43.) With regard to her daily activities, Plaintiff testified that she cleans the house, including mopping, sweeping, vacuuming, and wiping counters. (AR 62.) Typically, she can perform these chores for only 20 minutes at a time without becoming fatigued, and then she rests for approximately an hour. (AR 64.) Also due to fatigue, Plaintiff lies down approximately three times per day for approximately an hour or two each time. (AR 64.) She walks approximately one block, two to three times per day. (AR 57.) She does participate in social activities, such as the movies or church. (AR 63.) Plaintiff grocery shops with the assistance of her son. (AR 63.)

**2. Vocational Expert's Testimony**

A Vocational Expert ("VE") testified at the hearing that Plaintiff has past work as (1) a department manager, Dictionary of Operational Titles ("DOT") code 299.137-010, which was medium work, with a specific vocational preparation ("SVP") of 7; and (2) a demonstrator, DOT code 297.354-010, which was semiskilled light work, with an SVP of 3. (AR 72-73.)

The ALJ asked the VE one hypothetical question, in which the VE was to consider a person of Plaintiff's age, education, and work experience, who can occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk four hours in an eight-hour workday with normal breaks, sit for six hours in an eight-hour workday, frequently perform postural activities, and frequently perform manipulative activities bilaterally. (AR 73.) The ALJ then asked the VE whether, given this, such a person could perform any of Plaintiff's past work. (AR 73.) The VE testified that such a hypothetical person could not perform Plaintiff's past jobs as defined by the DOT or as performed. (AR 73.) The VE further testified that such a person could, however, perform the following other jobs: (1) sewing machine operator, DOT

7

code 787.685-046, light unskilled work, SVP of 2, for which there exists 42,000 jobs nationally; (2) cashier II, DOT code 211.462-010, light unskilled work, SVP of 2, for which there exists 835,000 jobs nationally; and (3) sub assembler, DOT code 729.684-054, light unskilled work, SVP of 2, for which there exists 10,300 jobs nationally. (AR 74-75.)

The ALJ then asked the VE a second hypothetical question considering the same person with the same capabilities as outlined in the first hypothetical, but who must avoid concentrated exposure to extreme cold, vibrations, fumes, odors, dust, gases, moisture, and humidity. (AR 75-76.) The VE testified that such limitations would not affect the person's abilities to perform the jobs identified in response to the first hypothetical. (AR 76.)

The ALJ asked the VE a third hypothetical question considering the same person with the same capabilities as outlined in the second hypothetical, but who can occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolding. (AR 76.) The VE testified that such limitations would not affect the person's abilities to perform the jobs identified in answer to the first hypothetical—that such a person could still perform light work with an SVP of 2. (AR 77.)

**C.     The ALJ's Decision**

In a decision dated May 7, 2015, the ALJ found that Plaintiff was not disabled. (AR 22-31.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 22.) The ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged disability onset date, April 24, 2012, to the date when she was last insured, December 31, 2015. (AR 24.)

At Step Two, the ALJ found that Plaintiff's rheumatoid arthritis, diabetes mellitus, distal arthritis, and arthritis sicca were severe. (AR 24.) The ALJ further found, however, that Plaintiff's hypertension, migraines, fatty liver, eczema, asthma, and low back pain were non-severe. (*See* AR 24-25.) At Step Three, the ALJ determined that Plaintiff had the RFC

> to perform less than the full range of light work as defined in 20 CFR 404.1567(a) and 416.967(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 4 hours in an 8-hour day, and sit for 6 hours

> in an 8-hour day. She can occasionally climb, balance, stoop, kneel, crouch, and crawl and frequently reach, handle, finger, and feel. She should avoid concentrated exposure to extreme cold, vibration, and pulmonary irritants such as fumes, gases, odors, dusts, and poor ventilation.

(AR 25.) In determining Plaintiff's RFC, the ALJ considered the statements and hearing testimony of Plaintiff, third party statements by Plaintiff's friend, Virginia Gonzalez-Rodriguez, Plaintiff's niece, Elissa Ramirez, Plaintiff's common-law husband, Louis Castro, Plaintiff's adult son, Juan Pulido, and Plaintiff's relative, Greg Borunda, and the medical opinions of state agency physicians, and physicians Roger Wagner, M.D. and Richard Bertken, M.D. (AR 25-29.) The ALJ ultimately found, given Plaintiff's RFC, that she was not disabled because she could perform jobs that existed in significant numbers in the national economy. (AR 29.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 15, 2016. (AR 1-6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**D.     Plaintiff's Appeal**

On November 21, 2016, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. (Doc. 1.) Plaintiff claims that the ALJ failed consider her fibromyalgia and carpal tunnel syndrome. (Doc. 14 at 14.) Specifically, Plaintiff contends that the ALJ did not address Dr. Wagner's October 2012 progress notes indicating "possible concomitant fibromyalgia," and Dr. Bertken's findings of fibromyalgia and carpal tunnel syndrome. (Doc. 14 at 14.)

### III.     SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.

*See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step,

the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V.     DISCUSSION

Plaintiff contends that the ALJ failed to consider the medical evidence in the record of her fibromyalgia and carpal tunnel syndrome. (Doc. 14 at 14.) The Commissioner counters that the ALJ considered all of the medical evidence in the record, and particularly the record evidence of Plaintiff's symptoms and limitations associated with fibromyalgia and carpal tunnel syndrome. (Doc. 15 at 7-10.)

**A.     Plaintiff Failed to Identify Fibromyalgia and Carpal Tunnel Syndrome.**

The ALJ has a duty to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1527(b)-(c); *Madrigal v. Berryhill*, No. CV 16-8714-E, 2017 WL 3120257, at *3 (C.D. Cal. Jul. 21, 2017). The ALJ has a further duty to develop the record fully and fairly to assure that the claimant's interests are considered, and to inform herself about facts relevant to her decision. *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). However, the ALJ's duty to develop the record is triggered only when there exists a gap in the evidence or the evidence cannot otherwise be properly evaluated. *Tonapetyan*, 242 F.3d at 1150; *see also Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) (ALJ has duty to develop record where there is a "perceived gap in the record"). The ALJ is under no obligation to consider impairments not raised by the claimant.

*Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). A claimant's failure to raise a claim before the ALJ, when represented by counsel, constitutes waiver. *Id*.

Here, Plaintiff did not allege in her applications for SSI and DIB that she suffered from fibromyalgia and carpal tunnel syndrome. Rather, Plaintiff's disability claim prior to this appeal related only to her arthritis, vertigo, migraines, and diabetes. (AR 209, 216, 242.) Nor did Plaintiff indicate at the hearing that she suffered from fibromyalgia and carpal tunnel syndrome, even when the ALJ specifically asked her to identify her impairments. (*See* AR 46, 47, 54, 59 (testifying that she has been diagnosed with rheumatoid arthritis, migraines, type 2 diabetes, and asthma).) Plaintiff was represented by counsel, who, when given the opportunity to question Plaintiff, asked Plaintiff no questions about fibromyalgia or carpal tunnel syndrome. Plaintiff's failure to identify, at the very least, fibromyalgia and carpal tunnel syndrome either in her disability applications, in her hearing testimony, or through her attorney, renders such claims waived. *See*, *e.g.*, *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (finding no error where ALJ did not consider plaintiff's PTSD because plaintiff, represented by counsel, failed to raise PTSD prior to his appeal); *Lualhati v. Astrue*, No. C-10-0341 EMC, 2010 WL 3001208, at *8-9 (plaintiff's failure to identify fibromyalgia or Sjogren's prior to her district court appeal resulted in waiver of those claims); *Legrand v. Astrue*, No. 4:08-cv-326 FRB, 2009 WL 801599, at *26-27 (E.D. Mo. Mar. 25, 2009) (noting that "[p]aintiff did not allege a mental impairment in his application, nor did he testify to a mental impairment at the hearing before the ALJ"). The ALJ was therefore not required to consider Plaintiff's fibromyalgia and carpal tunnel syndrome.

**B.     The ALJ Considered Limitations Associated with Fibromyalgia and Carpal Tunnel Syndrome.**

Even to the extent that the ALJ was sufficiently on notice of Plaintiff's fibromyalgia and carpal tunnel syndrome, the ALJ did not err in his RFC analysis simply because he did not discuss these impairments in his decision. Once a claimant prevails at the Second Step of the sequential evaluation—as Plaintiff did here—by achieving a finding of some severe impairment, regardless of which condition is found to be severe, the ALJ proceeds with the sequential evaluation, considering at each step all other alleged impairments *and symptoms* that may impact

the claimant's ability to work. *See* 42 U.S.C. § 423(d)(2)(B) ("In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.").

Plaintiff prevailed at the Second Step. Therefore, any purported error by the ALJ in failing to consider Plaintiff's fibromyalgia and carpal tunnel syndrome at the Second Step was harmless because the ALJ found four severe impairments—rheumatoid arthritis, diabetes mellitus, distal arthritis, and arthritis sicca—and continued to consider all of Plaintiff's symptoms in the remaining steps. (AR 24); *see generally Lewis*, 498 F.3d 909 (concluding that the ALJ's classification of one of claimant's impairments as non-severe at the Second Step was harmless error, because claimant was found to have other severe impairments, and the ALJ extensively discussed claimant's non-severe impairments symptoms in the Fourth Step); *Smolen*, 80 F.3d at 1290 (recognizing that, if one severe impairment exists, all medically determinable impairments an symptoms must be considered in the remaining steps of the sequential analysis). Thus, the question becomes whether the ALJ properly considered the functional limitations associated with Plaintiff's fibromyalgia and carpal tunnel syndrome at the remaining steps.

Treatment notes from October 2, 2012, stated that the swelling in Plaintiff's hand joints and her partial response to prednisone and methotrexate "[s]uggest[ed] possible concomitant fibromyalgia." (AR 401.) Although the ALJ did not specifically identify these treatment notes, as Plaintiff contends, the ALJ did address the swelling in Plaintiff's hand joints and her response to prednisone and methotrexate. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[I]n interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998), and citing *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). The ALJ stated, "[Plaintiff] went to the emergency room in June 2012 with complaints of pain and swelling in her hands. Bilateral x-rays were normal. The affected joints were primarily in the knuckles in the

13

hands, the wrists, the ankles, and the shoulders. She had a history of very inflamed metacarpopholangeal joints in the hands that had very significantly improved." (AR 28.) Plaintiff was prescribed methotrexate and prednisone during her August 2012 hospital visit, and the ALJ discussed the notes taken during that visit. (AR 25.)

The ALJ also addressed the fibromyalgia and carpal tunnel syndrome symptoms identified by treating rheumatologist Dr. Bertken. In May 2013, Dr. Bertken noted that Plaintiff's "shooting pain in her fingers" and widespread tenderness suggested a "full complement of [fibromyalgia] symptoms." (AR 432.) In March and July 2014, Dr. Bertken diagnosed Plaintiff with carpal tunnel syndrome. (AR 443, 448.) The ALJ expressly acknowledged that Dr. Bertken noted "a dominant symptom of fibromyalgia," and that "[t]here was widespread tenderness [suggesting a] full complement of fibromyalgia." (AR 29.) The ALJ considered, though, that "[i]n July 2014, the claimaint[] . . . [had] no flare-ups or joint swelling but occasional joint pains," and that "[s]he had intermittent pain and numbness at the right hand/fingers and had an injection in the right wrist in March 2014 that helped in controlling her symptoms." (AR 29.) Further, Dr. Bertken noted, after performing a musculoskeletal examination, that Plaintiff's pain symptoms may be a side effect of Plaintiff's statin medication. (AR 418.)

Moreover, Plaintiff has not identified any limitations arising from her fibromyalgia and carpal tunnel syndrome that the ALJ did not consider in determining her RFC. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) (noting that plaintiff "has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider); *Lualhati*, 2010 WL 3001208, at *8-9 (finding no error in ALJ's failure to specifically consider fibromyalgia, Sjogren's, and incontinence, in part, because plaintiff did not identify any limitations arising from those impairments that the ALJ did not take into account).

Accordingly, in light of the record and Plaintiff's failure to raise these physical impairments, the Court finds that the ALJ did not err in specifically discussing fibromyalgia and carpal tunnel syndrome. Consequently, reversal of the ALJ's decision on this ground is not warranted.

//

## VI. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is, therefore, AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Elizabeth Marie Martinez.

IT IS SO ORDERED.

Dated: **March 20, 2018**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE